SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

## State v. Raquel Ramirez; State v. Jorge Orozco (A-59-19) (083902)

**Argued December 1, 2020 -- Decided April 14, 2021**

**FERNANDEZ-VINA, J., writing for the Court.**

In this case, the Appellate Division found reversible error in the manner in which the trial court instructed the jury on accomplice liability and vacated both the manslaughter and the endangering convictions of each defendant.

Raquel Ramirez and Jorge Orozco were charged with murder and endangering the welfare of a child in connection with the death of their two-year-old daughter. They were tried jointly. The prosecution argued in part that defendants were equally responsible for the many injuries their daughter suffered, including the blunt-force head trauma that caused her death, by failing to prevent those injuries.

In keeping with that theory of the case, the court instructed the jury on the elements of N.J.S.A. 2C:2-6(c)(1)(c), which governs accomplice liability for the failure to prevent the commission of an offense when under a legal duty to do so. In preparing the jury charge, the trial court looked to the only precedential authority to address that particular section of the accomplice liability statute, State v. Bass, 221 N.J. Super. 466 (App. Div. 1987). In Bass, the Appellate Division approved a challenged instruction on accomplice liability for murder under -6(c)(1)(c). Id. at 488. The trial court here expressed misgivings about the charge approved in Bass, which seemed to the court to create a "real possibility that a defendant can be convicted as an accomplice of murder without striking a blow and without sharing the purposeful intent to kill." Nevertheless, noting that Bass remained good law, the court derived its charge to accomplice liability for murder directly from that opinion.

The jury acquitted both defendants of murder but convicted each of a lesser included offense -- Ramirez of second-degree reckless manslaughter, Orozco of first-degree aggravated manslaughter. The jury found both defendants guilty of endangering. The Appellate Division found reversible error in the accomplice liability charge and vacated both the manslaughter and the endangering convictions of each defendant.

**HELD:** The Court affirms as to defendants' respective manslaughter convictions but reverses as to their convictions for endangerment.

1.  Based on the accomplice liability statute's plain language, the Court shares the Appellate Division's view that the jury "should have been clearly instructed that culpability under [N.J.S.A. 2C:2-6(c)(1)(c)] required proof beyond a reasonable doubt that the conscious object of a defendant's failure to prevent the commission of a particular crime was to promote or facilitate the crime." 462 N.J. Super. 1, at 25-26 (App. Div. 2019). The Court reviews the instruction given in detail and finds that it was clearly capable of confusing the jury because "the judge did not instruct the jury that the State was required to prove a defendant's failure to act was with a purpose to promote or facilitate the specific crime." Id. at 25. And, in light of "the circumstantial nature of the proofs in this case, the failure to provide such an instruction was clearly capable of producing an unjust result," requiring reversal. See id. at 26. The matter is remanded for a new trial on defendants' respective manslaughter convictions. (pp. 3-6, 11)

2.  The Court offers guidance to trial courts as to accomplice liability instructions under N.J.S.A. 2C:2-6(c)(1)(c) when two parents owe a legal duty to protect their child from harm. The Court notes that a particular passage from State v. Bielkiewicz, 267 N.J. Super. 520, 529 (App. Div. 1993), has the same potential to cause confusion as the language in Bass because it, too, would permit a prosecutor to argue that if an actor is liable for a "knowing" crime, vicarious liability for that crime or a lesser-included crime may attach to an accomplice who purposely promoted or facilitated the actor's conduct knowing that the criminal result was sufficiently likely to follow. Such a result is untenable under N.J.S.A. 2C:2-6(c)(1). The Court requests that the Committee on Model Criminal Jury Charges draft a model charge in connection with accomplice liability under N.J.S.A. 2C:2-6(c)(1)(c). (p. 6-10)

3.  The trial judge charged endangering after charging murder and the relevant lesser included offenses of murder. The judge read the model charge verbatim, no objection to the endangering instruction was made at trial, and there is no ground for finding that the endangering charge was tainted by the accomplice liability charge. Defendants' convictions for endangering are reinstated. (pp. 10-11)

**AFFIRMED AS MODIFIED in part and REVERSED in part.**

**JUSTICE ALBIN, concurring,** is of the view that accomplice liability does not have to play any role in the retrial of defendants on the manslaughter charges. Rather, Justice Albin writes, when parents have a legal obligation, as here, not to allow a child to be physically abused, they can be charged directly as principals for their alleged recklessness in causing the child's death under the manslaughter statute.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICE ALBIN filed a concurrence.**

State of New Jersey,

Plaintiff-Appellant,

v.

Raquel Ramirez,

Defendant-Respondent.

_____

State of New Jersey,

Plaintiff-Appellant,

v.

Jorge Orozco,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
462 N.J. Super. 1 (App. Div. 2019).

| Argued | Decided |
| --- | --- |
| December 1, 2020 | April 14, 2021 |

Sarah C. Hunt, Deputy Attorney General, argued the
cause for appellant (Gurbir S. Grewal, Attorney General,
attorney; Sarah C. Hunt, of counsel and on the briefs).

Alyssa A. Aiello, Assistant Deputy Public Defender, argued the cause for respondent Raquel Ramirez (Joseph E. Krakora, Public Defender, attorney; Alyssa A. Aiello, of counsel and on the briefs).

Frank M. Gennaro, Assistant Deputy Public Defender, argued the cause for respondent Jorge Orozco (Joseph E. Krakora, Public Defender, attorney; Frank M. Gennaro, of counsel and on the briefs).

Darcy J. Baboulis-Gyscek argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; Darcy J. Baboulis-Gyscek, and Aidan P. O'Connor, on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

Defendants Raquel Ramirez and Jorge Orozco were charged with murder and second-degree endangering the welfare of a child in connection with the death of their two-year-old daughter. They were tried jointly. The prosecution argued in part that defendants were equally responsible for the many injuries their daughter suffered, including the blunt-force head trauma that caused her death, by failing to prevent those injuries. In keeping with that theory of the case, the court, when presenting the charge for murder and its relevant lesser included offenses, instructed the jury on the elements of N.J.S.A. 2C:2-6(c)(1)(c), which governs accomplice liability for the failure to prevent the commission of an offense when under a legal duty to do so.

2

The jury acquitted both defendants of murder but convicted each of a lesser included offense -- Ramirez of second-degree reckless manslaughter, Orozco of first-degree aggravated manslaughter. The jury found both defendants guilty of endangering.

The Appellate Division found reversible error in the manner in which accomplice liability was charged and vacated both the manslaughter and the endangering convictions of each defendant. We affirm as to defendants' respective manslaughter convictions but reverse as to their convictions for endangerment.

I.

We affirm the judgment of the Superior Court, Appellate Division, as to defendants' manslaughter convictions substantially for the reasons given in Judge Messano's comprehensive opinion, reported at 462 N.J. Super. 1 (App. Div. 2019).

Under N.J.S.A. 2C:2-6(c)(1), a person may be deemed "an accomplice of another person in the commission of an offense if . . . [w]ith the purpose of promoting or facilitating the commission of the offense," that person takes one of the courses of action specified in subsections -6(c)(1)(a) through -6(c)(1)(c). Based on that plain statutory language, we share the Appellate Division's view that the jury "should have been clearly instructed that culpability under

3

[N.J.S.A. 2C:2-6(c)(1)(c)] required proof beyond a reasonable doubt that the conscious object of a defendant's failure to prevent the commission of a particular crime was to promote or facilitate the crime." Ramirez, 462 N.J. Super. at 25-26. Because the charge given did not so instruct the jurors, we agree that a new trial is warranted on the manslaughter convictions.

A.

In preparing a jury charge on the theory of accomplice liability advanced by the prosecution under N.J.S.A. 2C:2-6(c)(1)(c), the trial court looked to the only precedential authority to address that particular section of the accomplice liability statute, State v. Bass, 221 N.J. Super. 466 (App. Div. 1987). See Ramirez, 462 N.J. Super. at 22. In Bass, the Appellate Division approved a challenged instruction on accomplice liability for murder under -6(c)(1)(c). 221 N.J. Super. at 488.

The trial court here expressed misgivings about the charge approved in Bass, which seemed to the court to create a "real possibility that a defendant can be convicted as an accomplice of murder without striking a blow and without sharing the purposeful intent to kill." Nevertheless, noting that Bass remained good law, the court derived its charge to accomplice liability for murder directly from that opinion, changing only the victim's name, and adapted the Bass charge to fit the lesser-included manslaughter charges.

4

The trial judge's accomplice liability instructions for murder, aggravated manslaughter, and reckless manslaughter read as follows:

> If you find that only one defendant committed the acts causing [D.O.]'s death, the other can be deemed an accomplice to murder if you find that he or she was a natural parent or person having custody or control over the child or who otherwise assumed responsibility for her; and that he or she was aware of and <u>purposely did nothing to stop the alleged abuse and did nothing with purpose or knowledge</u> that the alleged abuse by the other would result in death or serious bodily injury resulting in death.
>
> If you find that only one defendant committed the acts causing [D.O.]'s death, the other can be deemed an accomplice to aggravated manslaughter if you find that he or she was a natural parent or person having custody or control of the child or who otherwise assumed responsibility for her; and that <u>he or she was aware of and recklessly did nothing to stop the alleged abuse</u> and did nothing under circumstances manifesting extreme indifference to human life.
>
> If you find that only one defendant committed the acts causing [D.O.]'s death, the other can be deemed an accomplice to reckless manslaughter if you find that he or she was the natural parent or person having custody or control of the child or who otherwise assumed responsibility for her and that <u>he or she was aware of and recklessly did nothing to stop the alleged abuse</u> and did nothing despite being aware of and consciously disregarding the risk of causing death.
>
> [(emphases added, and we have initialized the victim's name as per the Appellate Division's practice in this case, see <u>Ramirez</u>, 462 N.J. Super. at 5 n.1).]

5

That instruction was clearly capable of confusing the jury since accomplice liability under our Criminal Code requires the accomplice to act or fail to make a proper effort to act "[w]ith the purpose of promoting or facilitating the commission of the offense." N.J.S.A. 2C:2-6(c)(1) (emphasis added).

As the Appellate Division determined, the trial court's instruction did not convey to the jury the required statutory findings for a conviction based on accomplice liability because, in "defining the concept of liability by omission as to murder, aggravated manslaughter, reckless manslaughter, and all lesser-included assaults, the judge did not instruct the jury that the State was required to prove a defendant's failure to act was with a purpose to promote or facilitate the specific crime." Id. at 25. And, in light of "the circumstantial nature of the proofs in this case, the failure to provide such an instruction was clearly capable of producing an unjust result," requiring reversal. See id. at 26.

B.

We offer the following comments to guide trial courts as to accomplice liability instructions under N.J.S.A. 2C:2-6(c)(1)(c) when two parents owe a legal duty to protect their child from harm.

Although there are three types of accomplice liability under N.J.S.A. 2C:2-6(c)(1), all three require the accomplice to act or fail to act "[w]ith the

6

purpose of promoting or facilitating the commission of the offense." N.J.S.A. 2C:2-6(c)(1) (emphasis added). "An accomplice is only guilty of the same crime committed by the principal if he shares the same criminal state of mind as the principal." State v. Whitaker, 200 N.J. 444, 458 (2009). However, an accomplice may be guilty of a lesser crime if their state of mind is different from the principal's. Thus, "an accomplice who does not have a shared purpose 'to commit a robbery with a weapon' is guilty of robbery -- not armed robbery." Id. at 459 (quoting State v. Weeks, 107 N.J. 396, 405 (1987)).

An accomplice liability inquiry necessarily focuses on the defendant's state of mind. See id. at 457 ("The Code's accomplice liability statute requires that a defendant act with a purposeful state of mind in furtherance of the crime."); State v. Bielkiewicz, 267 N.J. Super. 520, 529 (App. Div. 1993) ("If the actor is liable for an 'intent' crime, vicarious liability for that crime may only attach to an accomplice . . . who shared the intent that that crime be committed. Vicarious liability for a 'reckless' crime may also, however, attach when the actor commits an 'intent' crime and the accomplice . . . did not intend that that crime be committed but nevertheless intended that the actor take a specific action or actions which resulted in the crime." (omissions in original) (quoting State v. Bridges, 254 N.J. Super. 541, 566 (App. Div. 1992), aff'd in part, rev'd in part on other grounds, 133 N.J. 447 (1993))).

Accordingly, a finder of fact should first determine what the putative accomplice intended to do. If the accomplice intended to facilitate or assist the exact crime the putative principal is accused of, then the finder of fact may proceed along the lines spelled out by Whitaker and determine whether the defendant in fact acted, or failed to act, in accordance with that guilty mind, in order to facilitate the principal's commission of the criminal act. See Whitaker, 200 N.J. at 459.

However, if the factfinder determines instead that the alleged accomplice intended to facilitate the commission of a different crime than that of the principal, the focus should turn to the principal's conduct. In that scenario, the factfinder should determine whether the would-be accomplice engaged in an act, or evaded a legal duty, to facilitate an action or series of actions on the part of the principal with the desire that the principal carry out a particular crime.

Here, the trial judge's omission of the statutory language "[w]ith the purpose of promoting or facilitating the commission of the offense," N.J.S.A. 2C:2-6(c)(1), in his accomplice-liability instructions on murder, aggravated manslaughter, and reckless manslaughter clearly could have confused the jury. Reading the above instruction, the jury could have found that either defendant was an accomplice to aggravated or reckless manslaughter -- the charges the

defendants were convicted of -- by "recklessly [doing] nothing" to halt the abuse of the child. Given that accomplice liability under N.J.S.A. 2C:2-6(c)(1) is premised on the accomplice acting or failing to act "[w]ith the purpose of promoting or facilitating the commission of the offense," the judge's instruction on accomplice liability for murder, aggravated manslaughter, and reckless manslaughter was incomplete because it omitted such language.

Briefly, we find it necessary to comment on a particular passage from Bielkiewicz that quoted Bridges extensively and has the same potential to cause confusion as the language in Bass. In Bielkiewicz, the Appellate Division stated:

> If the actor is liable for a "reckless" crime, vicarious liability for that crime or a lesser-included "reckless" crime may attach to an accomplice . . . who purposely promoted or facilitated the actor's conduct; who was aware when he did so, considering the circumstances then known to him, that the criminal result was a substantial and [un]justifiable risk of that conduct; and who nevertheless promoted that conduct in conscious disregard of that risk.
>
> [267 N.J. Super. at 529 (omission and alteration in original) (quoting Bridges, 254 N.J. Super. at 566).]

Under that language, a defendant could be tried in almost the exact same manner as Ramirez and Orozco. A prosecutor could argue that if an actor is liable for a "knowing" crime, vicarious liability for that crime or a lesser-included crime may attach to an accomplice who purposely promoted or

9

facilitated the actor's conduct knowing that the criminal result was sufficiently likely to follow. Such a result is untenable under N.J.S.A. 2C:2-6(c)(1).

In accordance with this opinion, we request that the Supreme Court's Committee on Model Criminal Jury Charges draft a model charge in connection with accomplice liability under N.J.S.A. 2C:2-6(c)(1)(c) because the current model charge only includes instructions for accomplice liability related to N.J.S.A. 2C:2-6(c)(1)(a) and (b). See Model Jury Charges (Criminal), "Liability for Another's Conduct (N.J.S.A. 2C:2-6)" (rev. June 11, 2018).

## II.

We reverse the Appellate Division's judgment as to the endangering charges. The trial judge charged endangering after charging murder and the relevant lesser included offenses of murder. The judge read the model charge verbatim, and no objection to the endangering instruction was made at trial. See Mogull v. CB Com. Real Est. Grp., Inc., 162 N.J. 449, 466 (2000) ("It is difficult to find that a charge that follows the Model Charge so closely constitutes plain error."). Nor is there any ground for finding that the endangering charge was tainted by the accomplice liability charge: the judge made no reference to accomplice liability in charging endangering, which he presented to the jury as the discrete offense that it is. See, e.g., United States

v. Adamson, 700 F.2d 953, 968 (5th Cir. 1983) (finding "no spillover taint" from an erroneous jury instruction on one count where the other count was properly charged and "[t]here was a clear demarcation between the" charges for the two offenses). Accordingly, we reinstate defendants' convictions for endangering.[1]

III.

We affirm as to the manslaughter charges as modified by this opinion, and we reverse as to the endangerment charges. Defendants' convictions for endangering are reinstated, and the matter is remanded for a new trial on defendants' respective manslaughter convictions.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICE ALBIN filed a concurrence.

---

[1] The majority does not reach the issue of whether an accomplice liability charge is needed as raised by the concurrence because that issue is not presented in this appeal and was not argued by the parties.

State of New Jersey,

Plaintiff-Appellant,

v.

Raquel Ramirez,

Defendant-Respondent.

_____

State of New Jersey,

Plaintiff-Appellant,

v.

Jorge Orozco,

Defendant-Respondent.

JUSTICE ALBIN, concurring.

I concur with the majority that defendant Ramirez's manslaughter conviction and defendant Orozco's aggravated manslaughter conviction must be reversed because of the deficient jury instructions. I also concur that the child-endangerment convictions returned against both defendants must be reinstated because the erroneous instructions on the manslaughter convictions did not infect the separate instructions on child endangering.

1

I write separately because accomplice liability does not have to play any role in the retrial of defendants on the manslaughter charges. Under our child-abuse laws and child-endangering laws, each parent had an affirmative obligation to protect the child from physical abuse inflicted on the child by the other parent. See N.J.S.A. 9:6-8.21(c). A parent who allows another parent to inflict physical abuse on a child is a principal -- not an accomplice -- to the crimes of child abuse or neglect and child endangering. See N.J.S.A. 9:6-3 (abuse or neglect); N.J.S.A. 2C:24-4(a)(2) (endangering). A parent who recklessly allows another parent to inflict abuse on a child resulting in the child's death is a principal -- not an accomplice -- to the crime of manslaughter.

For the State to prove the reckless conduct requirement of manslaughter in this case, it does not have to satisfy the essential element of accomplice liability -- the purpose to promote an offense. Indeed, the purposeful conduct requirement of accomplice liability conflicts with the reckless conduct requirement of manslaughter in this parental child-abuse case. Therefore, on remand, the trial court should not give an accomplice-liability charge that will place an unnecessary burden on the State and likely confuse the jury.

2

I.

Defendants were charged with criminal responsibility for the death of their two-year-old daughter, who died of blunt-force head trauma. When the police and emergency services personnel responded to defendant Orozco's apartment, they found the little girl motionless and with terrible bruises and bite and gash marks over her body.[1]

The prosecution presented two alternative theories: (1) both parents inflicted the injuries that caused their daughter's death or (2) one of the parents inflicted the abuse and the other failed to exercise that minimal level of parental care required under the law to protect the child.

Under N.J.S.A. 9:6-8.21(c), a child suffers abuse or neglect by a parent when that parent

> (1) [i]nflicts or <u>allows to be inflicted</u> upon such child physical injury by other than accidental means which causes or creates a substantial risk of death . . . ;
>
> (2) [c]reates or <u>allows to be created</u> a substantial or ongoing risk of physical injury to such child by other than accidental means which would be likely to cause death . . . ; [or]
>
> . . . .
>
> (4) [fails] to exercise a minimum degree of care

[1] The daughter resided with her father, Orozco, but her mother, Ramirez, had also been staying with them in the days immediately preceding her death.

3

. . . .

> (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or <u>allowing to be inflicted</u> harm, or substantial risk thereof, including the infliction of excessive corporal punishment.
>
> [N.J.S.A. 9:6-8.21(c)(1)-(2), (4)(b) (emphases added).]

Under the endangering the welfare of a child statute,

> [a]ny person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who causes the child harm that would make the child an abused or neglected child as defined in . . . [N.J.S.A.] 9:6-8.21 is guilty of a crime of the second degree.
>
> [N.J.S.A. 2C:24-4(a)(2).]

<u>See also</u> N.J.S.A. 9:6-3 ("Any parent . . . who shall abuse, be cruel to or neglectful of any child shall be deemed to be guilty of a crime of the fourth degree."). Significantly, when the trial court gave its instructions on child endangering, it did not charge on accomplice liability. Both defendants were treated as principals.

This Court has held that "[a] parent has the obligation to protect a child from harms that can be inflicted by another parent." <u>DYFS v. F.M.</u>, 211 N.J. 420, 449 (2012). Indeed, a parent's failure to act when another person is inflicting harm on a child can be the basis for an abuse or neglect adjudication.

4

See DCPP v. J.L.G., 450 N.J. Super 113, 121-23 (App. Div. 2015), aff'd o.b., 229 N.J. 113 (2017).

Because parents have an affirmative obligation to protect a child from abuse -- particularly from abuse that is likely to cause the child's death -- parents necessarily act recklessly when they fail to do so. Defendants are guilty of criminal manslaughter when they "recklessly" cause death, N.J.S.A. 2C:11-4(b)(1), and of aggravated manslaughter when they "recklessly cause[] death under circumstances manifesting extreme indifference to human life," N.J.S.A. 2C:11-4(a)(1).

Under the manslaughter statute, "[a] person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." N.J.S.A. 2C:2-2(b)(3). Here, for purposes of the manslaughter statute, the material element is death. Therefore, the question is whether one parent "consciously disregard[ed] a substantial and unjustifiable risk" that death would result by failing to protect the child from the physical abuse caused by the other parent.

Because parents have the legal responsibility to stop the abuse of a child, the doctrine of accomplice liability does not apply. A parent who consciously disregards a substantial and unjustifiable risk of causing death to a child by

5

inflicting or allowing to be inflicted such physical injury on the child is guilty of manslaughter as a principal, not as an accomplice. Accomplice liability confuses the issue by adding the element of purposeful conduct.

Under the accomplice liability statute,

> [a] person is an accomplice of another person in the commission of an offense if . . . [w]ith the purpose of promoting or facilitating the commission of the offense; he . . . [h]aving a legal duty to prevent the commission of the offense, fails to make proper effort so to do.
>
> [N.J.S.A. 2C:2-6(c)(1)(c) (emphasis added).]

As noted, a parent has a legal obligation not to "allow" another parent to inflict physical injury on a child that "creates a substantial risk of death." See N.J.S.A. 9:6-8.21(c)(1). Because defendants can be prosecuted as principals under the manslaughter statute, the State undertakes an additional and unnecessary burden by proceeding on an accomplice liability theory.

On retrial, given the facts of record, I do not see a need for an accomplice liability approach.

## II.

To be clear, I express no opinion on whether defendants have committed manslaughter or aggravated manslaughter. That is for the jury to decide. The instructions to the jury on those charges, however, should be clear and avoid confusion. Simply stated, when parents have a legal obligation, as here, not to

6

allow a child to be physically abused, they can be charged directly as principals for their alleged recklessness in causing the child's death under the manslaughter statute.

I therefore concur in the judgment.